IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSEPH K.,

    *Plaintiff,*

vs.

    Case No. 2:23-cv-2054-EFM-ADM

FOLEY INDUSTRIES EMPLOYEE
BENEFIT PLAN – PLAN NUMBER 501,
et al.,

    *Defendants.*

**MEMORANDUM AND ORDER**

Before the Court are three Motions for Summary Judgment: Plaintiff Joseph K.'s (Doc. 32); Defendant The Prudential Insurance Company of America ("Prudential")'s (Doc. 36); and Defendant Foley Industries, Inc. ("Foley")'s (Doc. 39). Also pending is Prudential's Motion for Hearing (Doc. 38). Plaintiff's case arises under § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA").[1] Plaintiff seeks an order overturning Prudential's denial of disability benefits after Foley terminated Plaintiff's employment. Because Prudential's decision to deny Plaintiff disability benefits under his employment benefit plan was arbitrary and capricious, the Court grants Plaintiff's Motion and awards Plaintiff attorney's fees and

---

[1] Now codified as 29 U.S.C. § 1132(a)(1)(B).

prejudgment interest. The Court denies both of Defendants' Motions. Finally, because oral argument is unnecessary in this matter, the Court denies Prudential's Motion for Hearing as moot.

## I. Factual and Procedural Background[2]

Prior to January 17, 2022, Plaintiff worked for Foley as a Network Services Manager. In that position, Plaintiff had access to the Foley Industries Employee Benefit Plan—Plan Number 501 ("the Plan"), an employee welfare benefit plan established under ERISA. The Plan provides coverage for Short-Term Disability (STD) and Long-Term Disability (LTD) benefits, which Prudential insures and administers.

The Plan defines a "Covered Employee" as "an individual who is (or was) provided coverage under this Plan by virtue of the individual's employment or previous employment with the Employer." Regarding the criteria for disability, the Plan states:

> You are disabled when Prudential determines that: you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury, you are under the regular care of a doctor, and you have a 20% or more loss in weekly earnings [for STD benefits and monthly earnings for LTD benefits] due to the same sickness or injury.

Coverage under the Plan ends "the last day you are in active employment" or "the date you are no longer in active employment due to a disability that is not covered under the plan." The Plan leaves any interpretational issues to Prudential's sole and absolute discretion.

On January 17, 2022, Foley terminated Plaintiff's employment. In his personal statements to Prudential and self-reports to treating physicians, Plaintiff claimed that he lost his job because of ankylosing spondylitis, chronic iridocyclitis, arthropathic psoriasis, and memory issues. The

---

[2] For the purposes of this Order, the facts are taken from the administrative record and are uncontroverted.

record reflects that Plaintiff took off work "from tim [sic] to time" in the period leading up to his termination.

On February 9, 2022, Prudential issued a denial letter to Plaintiff. In that letter, Prudential stated, "Since your date of disability is January 18, 2022, which is after the date your coverage under Group Plan No. 53070 ended, you are not eligible to receive benefits." Prudential did not elaborate further as to the reasons for denying Plaintiff STD benefits.

Plaintiff appealed Prudential's decision internally. On October 4, 2022, Prudential affirmed its denial of STD benefits in another letter. In explaining its reasoning, Prudential stated:

> Your claim states that you discontinued working as a Network Services Manager on January 18, 2022, due to ankylosing spondylitis, chronic iridocyclitis, and arthropathic psoriasis. According to the information provided by Elekta Inc., your last day of employment was January 17, 2022, and you did not have an earnings loss prior to your last day of employment. It was further confirmed that you were terminated from employment on January 17, 2022. Because you were paid through January 17, 2022, your date of disability was determined to be January 18, 2022, as you did not have a prior earnings loss.
>
> Your claim for STD benefits was denied because we determined that you were not a member of a covered class at the time your claimed disability began, and thus are not covered by the plan. A complete explanation of that decision can be found in our letter dated February 9, 2022.

It also stated that Prudential "acknowledged that your reported disability began prior to January 17, 2022, [but] you did not have an earnings loss, as required by the plan, to meet the definition of disability prior to this date. Therefore, your date of disability is January 18, 2022, after you were terminated from employment."

Plaintiff also filed for LTD benefits under the Plan. On October 13, 2022, Prudential issued a denial letter, stating "Your LTD coverage with Prudential was no longer in effect as of January 17, 2022. Your disability began on January 18, 2022. Since your disability began after your coverage with us ended, you were not covered under the policy as defined in the enclosure." Once

again, Plaintiff appealed this decision within Prudential, resulting in another denial letter. In that letter, dated January 23, 2023, Prudential restated its conclusion that Plaintiff was not "disabled" under the Plan because he did not suffer a loss of earnings while employed. However, Prudential once again acknowledged without discussion that Plaintiff's medical conditions predated January 17, 2022.

Having exhausted his administrative remedies, Plaintiff filed the present case on February 9, 2023. Although Plaintiff initially asserted 15 claims against Defendants, the parties jointly requested that the Court bifurcate Plaintiff's case. The parties agreed that should Plaintiff prevail on his ERISA benefits claim, there will be no need to adjudicate his other claims. Because Plaintiff's ERISA claim for benefits against Prudential relies entirely on the administrative record, the magistrate assigned to this case granted the parties' request. Now, the parties each move for summary judgment on that claim, with Foley joining in Prudential's Motion. Additionally, Prudential requests a hearing on the pending Motions.

## II.     Legal Standards

### A.     Summary judgment

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[3] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[4] The movant bears

---

[3] Fed. R. Civ. P. 56(a).

[4] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

the initial burden of proof and must show the lack of evidence on an essential element of the claim.[5] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[6] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[7] "Where, as here, the parties in an ERISA case both moved for summary judgment, summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the nonmoving party is not entitled to the usual inferences in its favor."[8]

**B.     Judicial review of a denial of ERISA benefits**

ERISA requires administrators to provide the employee "adequate notice in writing . . . setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."[9]  "An administrator's explanation for a denial provided during a full and fair review cannot merely reference the claimant's evidence."[10]  Rather, "the administrator must include its reasons for denying coverage in the four corners of the denial letter."[11]

---

[5] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[6] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[7] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[8] *Ian C. v. UnitedHealthcare Ins.*, 87 F.4th 1207, 1217 (10th Cir. 2023) (further citation and quotations omitted).

[9] 29 U.S.C. § 1133(1); *see also* 29 C.F.R. § 2560.503-1(f)(3), (h)(3)–(4).

[10] *D.K. v. United Behav. Health*, 67 F.4th 1224, 1242 (10th Cir. 2023)

[11] *Ian C.*, 87 F.4th at 1219.

Accordingly, "[o]nly the rationales articulated to the beneficiary in the denial letter are eligible for review, both in the administrative appeal and before this court."[12]

In the ERISA context, the standard of review depends on whether the relevant benefits plan gave the administrator discretion to determine benefits.[13] If so, then courts must "apply the more deferential arbitrary-and-capricious review standard."[14] "Under arbitrary and capricious review, this court upholds [the administrator's] determination so long as it was made on a reasoned basis and supported by substantial evidence."[15]

Thus, a "lack of substantial evidence [or] mistake of law" underlying the administrator's decision are sufficient for a court to find that the denial of benefits was arbitrary or capricious.[16] If the "administrator's decision relies on an interpretation of the language in the plan, as it does here, [courts] begin by considering whether the provision is ambiguous."[17] If the language is unambiguous, courts construe the plan's terms as a matter of law.[18] In doing so, the court must "consider the common and ordinary meaning as a reasonable person in the position of the plan participant . . . would have understood the words to mean."[19] However, if the plan is ambiguous,

---

[12] *Id.* at 1226 (rejecting argument that "internal notes are properly a part of the administrative record" for purposes of judicial review).

[13] *See id.* at 1217.

[14] *Id.*

[15] *Van Steen v. Life Ins. of N. Am.*, 878 F.3d 994, 997 (10th Cir. 2018); *see also Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1232–33 (10th Cir. 2012) (noting that abuse of discretion and arbitrary and capricious standard are interchangeable in ERISA context).

[16] *David P. v. United Healthcare Ins.*, 77 F.4th 1293, 1308 (10th Cir. 2023) (further citations and quotations omitted).

[17] *Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1362 (10th Cir. 2009)

[18] *Id.*

[19] *Id.* (further citations and quotations omitted).

then courts "take a hard look and determine whether the plan administrator's interpretation of the ambiguous language was arbitrary in light of the administrator's conflict of interest."[20]

### III.     Analysis

**A.     The Court grants summary judgment to Plaintiff on his ERISA benefits claim.**

Plaintiff asks this Court to award him STD and LTD benefits under the Plan. Defendants urge this Court to uphold Prudential's decision and deny Plaintiff benefits. Ultimately, after construing the Plan's terms, the Court concludes that Defendant's interpretation is incorrect.

In rejecting Plaintiff's claim for STD and LTD benefits, Prudential relied on the definition for "disabled" included within the Plan. Because that definition requires loss of earnings, Prudential concluded that Plaintiff was not disabled before losing his job. And after losing his job, Prudential asserts that Plaintiff was no longer covered by the Plan.

Defendants' argument borders on frivolous. It misconstrues the Plan's unambiguous terms to give its "loss of earnings" requirement a meaning no reasonable or ordinary person could foresee. Specifically, Defendants wholly ignore the loss of earnings an employee suffers when he stops working, either voluntarily or through termination.

Under Defendants' interpretation of the Plan, an employee would only be eligible for either STD or LTD benefits if they kept working more than 32 hours a week while simultaneously suffering some loss of earnings. It would completely deny any benefits to an employee fired, shifted to part-time work (i.e., less than 32 hours a week), or one who resigns because of disability. If the Court adopted Defendants' view, all claims brought by employees in those situations would

---

[20] *Id.* (further citations, quotations, and brackets omitted); *see also Holcomb v. Unum Life Ins. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009) (acknowledging inherent conflict of interest when insurer is also plan administrator and weighing conflict of interest as a factor in determining abuse of discretion).

automatically fail, regardless of when they were brought.  For instance, if a disabled employee brought a claim for benefits before experiencing a loss of earnings, that claim would be premature and denied.  But the second that employee loses their job or shifts to less than 32 hours a week—resulting in loss of earnings—they are no longer covered.  Such an unreasonably narrow interpretation, resulting in a Catch 22 situation, is the epitome of arbitrary and capricious decision-making.

Although Defendants argue that an employee could be covered under the Plan by taking leave under the Family and Medical Leave Act due to disability—and thus experience an earnings loss—while employed, they miss the point.  Yes, an employee *could* be eligible for benefits in that scenario. However, if that were the only way in which employees could receive benefits, it would effectually punish those individuals committed to working despite disability.[21]  Similar arguments by insurance administrators, advocating that employees cannot be eligible for benefits or considered disabled while working, have been soundly rejected by the circuits to have considered them.[22]

Undeterred by this reasoning, Defendants support their position by citing cases in which the loss of earnings requirement met no resistance from courts.  However, Defendants confuse the loss of earnings requirement with their erroneous interpretation of it.  None of Defendants' cited cases mention the critical issue before this Court, which is whether termination may fulfill the loss of earnings requirements.  Rather, the primary issue in Defendants' cited cases was whether the employee was medically incapable of performing his or her work.  Many of those cases assume

---

[21] *See Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 918 (7th Cir. 2003) (Posner, J.) ("A disabled person should not be punished for heroic efforts to work by being held to have forfeited his entitlement to disability benefits should he stop working.").

[22] *See Chandhok v. Companion Life Ins.*, 478 F. Supp. 3d 1157, 1179 (D.N.M. 2020) (collecting cases).

without discussion that the employee's loss of earnings arose when the employee ceased working.[23] Thus, while the loss of earnings requirement is nothing new to the Tenth Circuit, Defendants' unreasonably restrictive interpretation of it certainly is. It is that interpretation—not the loss of earnings requirement itself—which the Court finds arbitrary and capricious.

Moreover, the surrounding language of the Plan clearly contemplates situations where an employee loses his job because of a disability. Indeed, a "Covered Employee" is "an individual who is (or was) provided coverage under this Plan by virtue of the individual's employment *or previous employment* with the Employer." Likewise, coverage ends "the last day you are in active employment" or "the date you are no longer in active employment *due to a disability that is not covered under the plan*." That last phrase implies that coverage continues for employees no longer in active employment due to a disability that *is* covered under the plan. After reading these provisions, a reasonable and ordinary person could only conclude that the Plan applies to employees terminated because of disability. Thus, a complete loss of earnings through termination or otherwise ceasing work satisfied the loss of earnings requirement under the Plan.

Defendant's position that Plaintiff did not experience any loss of earnings until he was no longer eligible for benefits is legally indefensible. Because Prudential's sole articulated reason for denying Plaintiff benefits is that he had not suffered any loss of earnings while covered by the Plan, the Court grants Plaintiff's Motion for Summary Judgment. It also denies Defendants' Motions for the same.

**B.     Remand is inappropriate in this case.**

---

[23] *See, e.g.*, *Dardick v. Unum Life Ins. of Am.*, 739 F. App'x 481, 483 (10th Cir. 2018).

Defendants argue that if the Court grants Plaintiff's Motion, it should remand Plaintiff's claim so that Prudential may evaluate whether Plaintiff was medically disabled prior to January 17, 2022. "Having concluded that [the administrator's] decision was arbitrary, [courts] may either remand the case to the plan administrator for a renewed evaluation of the claimant's case or . . . order an award of benefits."[24] Remand in ERISA cases may be appropriate depending on "the nature of the flaws in the administrator's decision."[25] For example, "[r]emand is appropriate if the administrator failed to make adequate factual findings or failed to adequately explain the grounds for the decision."[26] However, "remand is not appropriate to provide the plan administrator the opportunity to reevaluate a claim based on a rationale not raised in the administrative record."[27] Thus, remand is improper if the reason for the administrator's denial was simply incorrect.[28]

Here, Prudential's sole reason for denying Plaintiff benefits was incorrect as a matter of law. But now Defendants contend that remand is necessary because Plaintiff's medical evidence is insufficient to show that he was disabled before January 17, 2022. The lack of sufficient medical evidence, however, was never articulated by Prudential as a reason for denying benefits in its denial letters to Plaintiff. In fact, Prudential "acknowledged that your reported disability began prior to January 17, 2022" in its letter affirming the denial of STD benefits. Likewise, in its letter affirming the denial of LTD benefits, Prudential reaffirmed it knew Plaintiff maintained that his

---

[24] *David P. v. United Healthcare Ins.*, 77 F.4th 1293, 1315 (10th Cir. 2023) (further citations and quotations omitted).

[25] *Weber v. GE Grp. Life Assur. Co.*, 541 F.3d 1002, 1015 (10th Cir. 2008).

[26] *Carlile v. Reliance Standard Life Ins.*, 988 F.3d 1217, 1229 (10th Cir. 2021); *see also Messick v. McKesson Corp.*, 640 F. App'x 796, 799 (10th Cir. 2016) (remanding case when beneficiary was unaware his first-level appeal had been denied and thus has not submitted a complete record to the administrator).

[27] *Carlile*, 988 F.3d at 1229.

[28] *See David P.*, 77 F.4th at 1315.

medical disability began prior to January 17, 2022. Prudential did not analyze the evidence nor indicate that it disbelieved Plaintiff's statement. Thus, the letters themselves show that Prudential accepted that Plaintiff's disabilities arose prior to his termination. And under binding Tenth Circuit precedent, the Court must only analyze the letters sent to Plaintiff when reviewing Prudential's denial.

Furthermore, this case illustrates why remand would not serve any purpose—at least, not any permissible purpose. Defendants ask for remand merely to reevaluate Plaintiff's claims based on rationales Prudential did not articulate upon in its denial letters. Thus, even if this Court were to remand this case, Prudential could not consider this newly raised rationale when evaluating Plaintiff's claim. Therefore, the Court denies Defendants' request for remand.

**C.      The Court grants Plaintiff reasonable attorney's fees and prejudgment interest.**

In addition to benefits under the Plan, Plaintiff requests attorney's fees and costs as well as prejudgment interest. ERISA allows courts to discretionarily award attorney's fees to a claimant "as long as [he] has achieved some degree of success on the merits."[29] Here, Plaintiff succeeds entirely. Thus, the Court in its discretion awards reasonable attorney's fees and costs to Plaintiff. Plaintiff is hereby directed to file the appropriate motion demonstrating the amount of attorney's fees to which he is reasonably entitled.

Similarly, the Court in its discretion finds that prejudgment interest is appropriate in this case. "An award of prejudgment interest in an ERISA case is also within the district court's discretion."[30] "Courts commonly look to state statutory prejudgment interest provisions as

---

[29] *Carlile*, 988 F.3d at 1230.

[30] *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 816 (10th Cir. 2010); *see also Weber*, 541 F.3d at 1016 ("This is because ERISA permits a participant to seek 'appropriate equitable relief.'") (quoting 29 U.S.C. § 1132(a)(3)(B)).

guidelines for a reasonable rate."[31]  Kansas law provides that when the parties do not agree on an interest, the "legal rate of interest" is 10% per annum.[32]  Without any argument from Defendants on this matter, the Court adopts Kansas law and awards Plaintiff prejudgment interest in the amount of 10% per annum from January 18, 2022, the date of he became eligible for benefits under the Plan due to his loss of earnings.

Because the Court has decided the parties' Motions for Summary Judgment without the need for oral argument, Prudential's Motion for Hearing is denied as moot.

The Court acknowledges that Plaintiff has 14 other claims pending against Defendants. However, the parties have previously agreed that should Plaintiff prevail on his § 502(a)(1)(B) ERISA benefits claim, there will be no need to adjudicate his other claims.  Plaintiff is therefore expected to voluntarily dismiss his other claims within the near future.  This case will remain open until then.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 32) is **GRANTED**.

**IT IS FURTHER ORDERED** that Prudential's Motion for Summary Judgment (Doc. 36) is **DENIED**.

**IT IS FURTHER ORDERED** that Foley's Motion for Summary Judgment (Doc. 39) is **DENIED**.

**IT IS THEREFORE ORDERED** that Prudential's Motion for Hearing (Doc. 38) is **DENIED** as moot.

---

[31] *Weber*, 541 F.3d at 1016.

[32] K.S.A. § 16-201(a).

**IT IS FURTHER ORDERED** that Plaintiff be awarded attorney's fees, costs, and prejudgment interest at 10% per annum.

**IT IS FURTHER ORDERED** that Plaintiff submit a motion for an award of attorney's fees demonstrating the amount to which Plaintiff is reasonably entitled within 45 days of the issuance of this Order.

**IT IS SO ORDERED.**

Dated this 14th day of February, 2024.

*[signature]*

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE